## Aaron B. Mead et al. v. J. McKenzie Cleland et al.

1. CHANCERY PRACTICE—*When the Complainant has a Remedy at Law.* —When it appears that the complainant in a chancery proceeding has a remedy at law his bill is properly dismissed.

2. INJUNCTIONS—*When Ineffectual.*—Rights already lost, and wrongs already perpetrated, can not be corrected by injunction.

3. SAME—*Damages on Dissolution may be Assessed where Injunction was Ineffectual.*—Appellants drew a check on the Royal Trust Company, payable to appellees, and deposited with the Northern Trust Company, to be held in escrow pending an investigation. Appellees replevied the check from the Northern Trust Company and procured payment on it from the Union Trust Company. Appellants procured an injunction restraining appellee from selling, assigning or presenting the check for payment, and also restraining the Royal Trust Company from paying it, but it was not served until after the check had been paid by the Union Trust Company. The Royal Trust Company refused to pay the check until the dissolution of the injunction, which was afterward accomplished on motion of the appellees. Appellant's bill was dismissed and damages assessed at $150. *Held,* the damages were proper.

**Bill for Injunction, etc.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in

this court at the October term, 1895.  Affirmed.  Opinion filed January 22, 1896.

J. D. Hubbard, attorney for appellants, contended that damages for services rendered in procuring the dissolution of an injunction will not be allowed when the party is restrained from doing something which he has no wish or intention to do, or which he has already done beyond recall; nor when, for any other reason, he has no interest in the subject-matter of the injunction, and would not be damnified if the injunction should be made perpetual.  Wilson v. Hecker, 85 Ill. 349; Moriarity v. Galt, 125 Ill. 417; Bank of Monroe v. Gifford, 70 Ia. 580; Winford v. McClure, 48 Ark. 510; High on Injunctions, Par. 1686.

Where the bill shows that complainants would be entitled to relief, although the prayer of the bill seeks the wrong relief, the injunction will not, for that reason, be dissolved. Panton v. Collar, 12 Ill. App. 160; Fisher v. Tribby, 5 Ill. App. 335.

The allowance of damages will not be sustained in this court even though the injunction was dissolved in the court below, if the injunction was originally rightfully issued.  Fisher v. Tribby, 5 Ill. App. 335.

The defendant is entitled to damages only for the services rendered in securing a dissolution of an injunction, and such services must be reasonable and necessary, and no allowance will be made for superfluous or unnecessary steps. Gerard v. Gateau, 15 Ill. App. 520; Alexander v. Colcord, 85 Ill. 323; Hamilton v. Stewart, 59 Ill. 330; Albright v. Smith, 68 Ill. 181.

Damages will not be allowed for services rendered after the dissolution of an injunction.  High on Injunctions, Par. 1686; Rees v. Peltzer, 1 Ill. App. 315; Gerard v. Gateau, 15 Ill. App. 519.

Nor will an allowance be made for services in procuring and preparing affidavits, unless it is shown that they were actually used at the hearing of the motion.  High on Inj., page 1263; Ellwood v. Rankin, 70, Ia. 403.

D. P. PHELPS, attorney for appellees, contended that the damages to be allowed under the statute on dissolution of an injunction are intended to cover the money the defendant has paid, or become liable to pay, on the motion to dissolve. Jevne v. Osgood, 57 Ill. 340.

It makes no difference upon the question of the allowance of solicitor's fees that the party has not paid them. It is enough that he is liable to pay them. Reich v. Berdel, 33 Ill. App. 186.

The allowance of solicitor's fees in such a case is determined in amount by the amount of the usual and customary fees, and where the party has paid or become liable to pay. Jevne v. Osgood, 57 Ill. 340; Rees v. Peltzer, 1 Ill. App. 315; Stinnett v. Wilson, 19 Ill. App. 38; Rosenthal v. Boaz, 27 Ill. App. 430; Zibell v. Barret, 30 Ill. App. 112.

If services are actually rendered of value equal to the sum allowed it is sufficient. Albright v. Smith, 68 Ill. 181.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

Growing out of a controversy between the appellants, composing the real estate firm of Mead & Coe, and the appellee, Cleland, wherein it was charged by Cleland that an employe of Mead & Coe had wrongfully retained and appropriated to his own use, in a certain real estate transaction, $3,075, which rightfully belonged to Cleland, it was agreed between the parties that Mead & Coe should deposit their check on the Royal Trust Company Bank for that sum, with the Northern Trust Company, to hold as an escrow pending such reasonable time as might be necessary to investigate the charge, and to protect themselves in other directions. The check was so deposited along with a written agreement between Mead & Coe and Cleland, which we call the escrow agreement, reciting the conditions upon which said check might be delivered to Cleland, and other details.

Subsequently, Mead & Coe became satisfied to pay $2,000 to Cleland, but disputed his right to have any more. It was then agreed that the $3,075 check should be surren-

dered to Mead & Coe, that $2,000 should be paid to Cleland, and that another check for $1,075, drawn on the Royal Trust Company by Mead & Coe to their own order and by them indorsed, should be substituted for the $3,075 check, and be deposited with the Northern Trust Company to be held under the same conditions as were set forth in the original escrow agreement, all of which was done.

Cleland then filed some kind of a bill in equity, under which it was proposed to litigate the respective rights of himself and Mead & Coe to the check, which bill was answered, and such proceedings were had in the case as caused Cleland to conclude that his remedy was at law and not in equity. He thereupon, on July 28, 1894, dismissed the bill, and immediately began a replevin suit for the check, making the Northern Trust Company sole defendant, and obtained possession of the check, and assigned it to the appellee, Gault, who obtained the money for it of the Union Trust Company Bank, and gave the money to Cleland, on said July 28th.

Appellants thereupon filed the bill now here for consideration, praying that the escrow agreement might be reformed; that the $1,075 check be delivered up and canceled, and for an injunction against Cleland from selling or assigning said check or presenting the same for payment, and also against the Royal Trust Company from paying said check; and a writ of injunction substantially in accordance with the prayer of the bill was issued and served on July 30, 1894.

Subsequently, and on December 21, 1894, appellants amended their bill, changing it with reference to the relief asked concerning the escrow agreement, to asking for a cancellation of the same instead of a reformation thereof, and that Cleland might be required to specifically perform a stipulation alleged to have been entered into by him during the progress of the bill instituted by him, with reference to the return to appellants of the said $1,075 check, in case the court should find that he was not entitled to it, without

the necessity of a cross-bill for that purpose, and answers to said amendments were filed.

Appellants' original bill having been answered, Cleland, on August 27, 1894, moved for a dissolution of the injunction upon bill, answers, and affidavits filed in support of the motion, and the same was dissolved.

It appeared by the affidavit of the assistant cashier of the Union Trust Company, the bank that had cashed the $1,075 check for Gault, that the bank had cashed said check in the regular course of its business, on July 28, 1894, which was a Saturday, after Clearing House hours; that said Union Trust Company was a member, and, inferentially, at least, that said Royal Trust Company was also a member of the said Clearing House; that on Monday, July 30th, said check was sent to the Clearing House in due course of business, and was paid; that on said Monday, July 30th, and before Clearing House hours, and before said check was paid, the said injunction at appellants' suit, had been served upon the said Royal Trust Company; that afterward the committee of the Clearing House required the Union Trust Company to return to the Royal Trust Company the amount of said check, because of the prior service of said injunction writ; that the Union Trust Company still held the said check, and that the Royal Trust Company would pay it as soon as the injunction was dissolved.

It should, perhaps, be said that said check, although not certified by the Royal Trust Company at the time it was first put up in escrow, was subsequently, and several months before it was replevied, certified by said bank by the procurement of somebody.

The injunction being dissolved on July 27, 1894, the check was paid to the Union Trust Company on the following day, through the Clearing House.

The cause thereafter proceeding to a full hearing upon the merits, a decree was entered dismissing appellants' said bill for want of equity, and awarding against appellants the sum of $150, for solicitor's fees incurred in procuring the dissolution of the injunction.

That decree was entered May 9, 1895. On May 17, 1895, an order was entered in which it was recited an appeal had been prayed as follows : " From the order heretofore entered herein on May 11, 1895, dismissing the bill of complaint out of this court, and sustaining exceptions to the master's report, which is granted on condition," etc.

The bond filed, in presumable compliance with the condition upon which the appeal was allowed, recites the recovery on May 9, 1895, of a judgment against appellants for the sum of one hundred and fifty dollars, from which they have been allowed an appeal, etc.

The record thus shows that the only appeal that was allowed was from an order entered May 11th, dismissing the bill, and no such order as of that date appears to have been made. Then, the appeal bond recites that it is from the judgment for $150, entered May 9th, and nothing else, that the appeal was prayed and allowed.

We are thus not at all certain what is before us—whether the whole case, or only the decree for solicitors' fees. It is a bad practice to guess that one thing is meant in a record when something different is stated, but as counsel have not offered any aid to us, and have argued the whole case as if it were here, we will speak, with a brevity suited to the circumstances, however, of the case as argued.

We will not attempt to elaborate reasons why the bill, as it was originally for a reformation of the escrow agreement, or, as it was made by amendment for a cancellation of that agreement, was insufficient. Concededly the bill was insufficient for a reformation. The amendments changing it to a bill for a cancellation of the agreement amount to but little more than allegations of a breach of contract, for which a remedy at law existed.

As to the $1,075 check, or the $2,000 that was paid to Cleland, the action in replevin, or an action for money had and received, would test every question raised as certainly and as adequately as a bill in equity.

The bill was, therefore, properly dismissed by the Circuit Court.

On the question of the award of solicitors' fees in pro-
curing the dissolution of the injunction there is not much
doubt.

At first view we thought the case came within the rule
stated in Cors v. Tompkins, 51 Ill. App. 315, that the
damage suffered because of the injunction was the limit of
recovery; and that in this case, Cleland having already
negotiated the check and obtained the money which it
represented before the injunction was granted, he could
suffer no damage by being restrained from doing that which
he had already done, and from obtaining that which he had
already received, and that he should not be permitted to re-
cover fees incurred by him in efforts to dissolve a wholly
inoperative injunction.

Rights already lost, and wrongs already perpetrated, may
not be corrected by injunction. Menard v. Hood, 68 Ill.
121; High on Injunctions, Sec. 32.

Whether an injunction, being inoperative because coming
too late and after the property rights sought to be pro-
tected from injury by it have passed beyond its reach, may
yet be burdensome upon the person against whom it is
directed, because of sentimental or other reasons not affect-
ing a strict property right, and because of that burden upon
him he be entitled to incur expense in dissolving it, which
may be assessed as damages against the procurer of the
injunction, is a matter upon which there may not be decisive
authority, and upon which the court may entertain differ-
ences of opinion, but which we may not commit ourselves
upon at this time.

It was here made to appear that although Cleland had ne-
gotiated and obtained the money upon the check before the
bill was filed, yet in fact the drawee of the check had not
paid it before being served with the injunction writ.   True,
the Union Trust Company to whom the check was negoti-
ated, did receive payment of the check through the clearing
house, but under the rules of the clearing house was re-
quired to and did in fact return the money so paid and take

back the check, because the drawee was enjoined from paying it before its payment was made.

Cleland, as well as his indorsee, Gault, were indorsers of the check, and whether, as a strict matter of law, liable thereon or not, because of the check having been once paid in the Clearing House, there was, nevertheless, such a possible (at least) liability on their part, as such indorsers, as gave Cleland an undoubted interest of a property character to procure the dissolution of the injunction.

Such a right existing on his part, he was entitled to be awarded his reasonable expenses, by way of damages, incurred in procuring its dissolution.

Some question is made about the reasonableness of the sum of $150 that was awarded as solicitors' fee, but in view of the work that was necessarily done, the standing of counsel, and the evidence that was considered upon the question, we can not say it was unreasonable.

The decree appealed from is therefore affirmed.